UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURICE JOHNSON, | No. 2:12-cv-02719 GEB KJN (PC) |
| Plaintiff, | |
| v. | ORDER |
| TOM FELKER, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding without counsel. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, and is proceeding in forma pauperis. This proceeding was referred to this court pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302.

On November 5, 2012, plaintiff initiated this action. ECF No. 1. Plaintiff's original complaint was dismissed with leave to amend. ECF No. 8. Plaintiff's first amended complaint is now before the court.

**I.      Screening Requirement**

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

1

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989); Franklin, 745 F.2d at 1227.

A complaint, or portion thereof, should only be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

## II. Plaintiff's First Amended Complaint

In his first amended complaint, filed on May 6, 2013, plaintiff names thirty-eight defendants: Tom Felker, Matthew Cate, Mike McDonald, M. Wright, T. Perez, P. Cochrane, D. Griffith, R. Rath, D. Spangle, B. Ingwerson, J. Lewis, J. Miller, M. Beutler, D. Phang, B. Ramesy, L. Alexander, R. Anderson, C. Aston, B. Cook, S. Boone, J. Fannon, N. Guzman, L. Hall, G. Harnden, M. Lindsey, S. Look, C. Mayo, D. McBride, W. McCart, J. McMoran, M. Morris, D. Rainwater, C. Walker, B. Wheeler, T. Wheeler, T. Young, M. Dangler, and D. Jackson. Pl.'s First Am. Compl. ("FAC") (ECF No. 16) ¶¶ 5-42.

To the extent the court can construe the allegations plaintiff sets forth in his first amended complaint, they will each be addressed in turn below.

////

////

### A. Class Action

In his first amended complaint plaintiff indicates he is bringing this action on behalf of a class. FAC ¶ 1. Plaintiff, however, is a non-lawyer proceeding without counsel. It is well established that a layperson cannot ordinarily represent the interests of a class. See McShane v. United States, 366 F.2d 286 (9th Cir. 1966). This rule becomes almost absolute when, as here, the putative class representative is incarcerated and proceeding pro se. Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975). In direct terms, plaintiff cannot "fairly and adequately protect the interests of the class," as required by Rule 23(a)(4) of the Federal Rules of Civil Procedure. See Martin v. Middendorf, 420 F. Supp. 779 (D.D.C. 1976). This action, therefore, will not be construed as a class action and instead will be construed as an individual civil suit brought by plaintiff. Plaintiff should not include any such claims in any future amended complaint.

### B. Supervisory Liability

Plaintiff alleges defendants Felker and Cate failed to "instruct, supervise, control, and/or discipline all named Defendants . . . in the performance of their duties to refrain from falsifying reports, conspiring to violate prisoner rights, retaliating against prisoners, neglecting to follow proper CDCR policy, failing to conduct lawful investigations of prisoners complaints, otherwise depriving persons of their constitutional, statutory and department privileges, rights and immunities." FAC ¶¶ 109, 113. Plaintiff further alleges defendants Cate, Felker, McDonald, Wright, Cochrane, Griffith, Ingwerson and Lewis violated his Eight Amendment right by failing to "adequately supervise the correctional officers subordinate to them." Id. ¶ 122.

As set forth in this court's prior screening order, to the extent plaintiff is attempting to assert a Section 1983 claim against the named supervisory defendants, plaintiff is advised that the Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the

actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Here, as with plaintiff's original complaint, plaintiff has failed to establish a causal link between the named supervisory defendants and his alleged constitutional violations. Plaintiff should not include any such claims in any future amended complaint.

### C. Eighth Amendment Claims

#### 1. Conditions of Confinement

Plaintiff alleges defendants Cate, Felker, McDonald, Wright, Cochrane, Griffith, Ingwerson and Lewis were aware of a "population crisis" in the state prison system. FAC ¶¶ 44, 47. According to plaintiff, defendant Cate "subjected over 10,000 prisoners, including Plaintiff, to conditions of confinement posing a substantial risk to their health and safety." FAC ¶ 49. Plaintiff further alleges that "Defendants, Cate, Felker, McDonald, Wright, Cochrane, Griffith, Ingwerson and Lewis enacted constitutionally-flawed policies, practices, or customs at [High Desert State Prison] of maintaining overcrowded conditions" that resulted in plaintiff suffering from "racial and class-based discrimination." FAC ¶ 51. Finally, plaintiff alleges that these defendants' policies – such as "severe overcrowding," housing prisoners in gymnasiums, "returning prisoners back onto the yard who have previously been involved in an altercation/riot,"

"inadequate weapon control," and "severe understaffing" – and their failure to remedy the conditions of confinement, have "deprive[d] Plaintiff of his Constitutional right to personal safety, violating Plaintiff's rights under the Eight Amendment."  FAC ¶¶ 120-21, 135-36, 140.

Allegations of overcrowding alone are insufficient to state a claim under the Eighth Amendment.  Rhodes v. Chapman, 452 U.S. 337, 348 (1981); Balla v. Idaho State Bd. of Corr., 869 F.2d 461, 471 (9th Cir. 1989); Akao v. Shimoda, 832, F.2d 119, 120 (9th Cir. 1987) (per curiam) (citing Hoptowit v. Ray, 682 F.2d 1237, 1249 (9th Cir. 1982)).  Rather, it must give rise to some condition which objectively can be said to deprive prisoners of the minimal civilized measure of life's necessities.  Wilson v. Seiter, 501 U.S. 294, 298 (1991); Chapman, 452 U.S. at 347.  Where crowding causes an increase in violence or reduces the provision of other constitutionally required services, or reaches a level where the institution is no longer fit for human habitation, however, the prisoner may be able to state a claim.  Balla, 869 F.2d at 471.

Here, notwithstanding plaintiff's alleged injury of "racial and class-based discrimination," FAC ¶ 51, plaintiff fails to allege specific injuries he has suffered due to the alleged overcrowding.  Thus, plaintiff's conclusory allegation that the institutional policies of defendants Cate, Felker, McDonald, Wright, Cochrane, Griffith, Ingwerson and Lewis violate his Eight Amendment rights fails to state a cognizable claim.  However, in an abundance of caution, plaintiff will be given leave to amend his first amended complaint.  Plaintiff must allege with specificity facts that demonstrate a violation of his constitutional rights.  Furthermore, plaintiff must identify the individual defendants in each paragraph of his amended complaint,[1] and link each named defendant to any act or failure to act that caused him to be harmed.  See Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); Johnson, 588 F.2d at 743-44.

////

////

---

[1] The court notes that plaintiff fails to identify defendants by name in many paragraphs of the first amended complaint.  See, e.g., FAC ¶ 64 ("Defendants, utilizing the DMS . . . proceeded to release the building for scheduled dayroom and RDO . . . worker yard.").  Plaintiff has named thirty-eight defendants in his first amended complaint.  The court will not undertake the tedious task of determining which defendant(s) plaintiff intends to name in each of these paragraphs.  As a result, many of plaintiff's allegations are vague and difficult to decipher.

### 2. Failure to Protect

With regard to plaintiff's failure to protect claim, plaintiff alleges as follows. On July 28, 2007, plaintiff and another inmate were told by defendants Beutler and Miller to leave their assigned housing facility to see defendant Ingwerson. FAC ¶ 63. Defendant Ingwerson then told plaintiff and another inmate that he needed their "help in consolidating bed moves." FAC ¶ 66. Defendant Ingwerson directed plaintiff to go to the prison yard despite plaintiff not being permitted yard access at that time. FAC ¶¶ 68-69. Defendant Ingwerson then stated to plaintiff, "'I caught wind that something is going down today. Nothing is going to happen on my yard today, is it!?'" FAC ¶ 70. According to plaintiff, "[t]he manner and tone used by [defendant] Ingwerson indicated that he, in fact, was completely aware of a possible disorder occurring on the yard and failed to take the minimal necessary steps to prevent its occurrence." Id. Plaintiff replied that he had "no idea," and defendant Ingwerson "then smiled, shook his head, smirked, turned and walked inside the program office." FAC ¶ 71. Approximately five minutes later, African American prisoners, including plaintiff, were attacked by prisoners with weapons. FAC ¶ 72. As a result of the attack, "correctional officers, armed with chemical agents and expandable batons, on their own and/or through orders, admittedly ran and watched behind the safety of closed doors and locked fences, placed their backs on the wall, and retreated back into building housing units." Id. Plaintiff alleges that during the attack defendants Rath, Spangle, Ingwerson, Lewis, Miller, Beutler, Phang, Ramsey, Alexander, Anderson, Aston, Cook, Boone, Fannon, Guzman, Hall, Harnden, Lindsey, Look, Mayo, McBride, McCart, McMoran, Morris, Rainwater, Walker, Wheeler B., Wheeler T., and Young failed to protect him by "watching as plaintiff was being attacked with weapons." FAC ¶¶ 73, 133.

The United States Supreme Court has determined that cruel and unusual punishment involves more than negligence or lack of due care for a prisoner's interests or safety. Whitley v. Albers, 475 U.S. 312, 319 (1986). Specifically, "it is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock."

1  Id. As explained in this court's previous order dismissing plaintiff's original complaint,

> the Eighth Amendment's prohibition on cruel and unusual punishment imposes on prison officials, among other things, a duty to "take reasonable measures to guarantee the safety of inmates." See Farmer v. Brennan, 511 U.S. 825, 832 (1991). To properly allege an Eighth Amendment claim for failure to protect an inmate from violence, the inmate must assert that he was incarcerated under conditions posing a "substantial risk of serious harm," and that a prison official displayed "deliberate indifference" to that risk. See id. at 834. A prison official displays deliberate indifference to inmate-on-inmate violence when he is "both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

ECF No. 8 at 4.

Here, as noted in this court's previous order, plaintiff has sufficiently alleged a failure to protect claim against defendant Ingwerson. See FAC ¶ 70 ("The manner and tone used by Sgt. Ingwerson indicated that he, in fact, was completely aware of a possible disorder occurring on the yard and failed to take the minimal necessary steps to prevent its occurrence."); see also ECF No. 8 at n.1. Plaintiff's claim that correctional officers failed to protect him by watching the attack from "behind the safety of closed doors and locked fences" may sufficiently allege a failure to protect claim against the following defendants: Rath, Spangle, Ingwerson, Lewis, Miller, Beutler, Phang, Ramsey, Alexander, Anderson, Aston, Cook, Boone, Fannon, Guzman, Hall, Harnden, Lindsey, Look, Mayo, McBride, McCart, McMoran, Morris, Rainwater, Walker, Wheeler B., Wheeler T., and Young. See FAC ¶¶ 73, 133. However, plaintiff does not include any factual basis as to how he knows such defendants watched the attack behind closed doors and locked fences – especially in light of the sheer number of defendants named by plaintiff. Plaintiff is advised to reallege the allegations against some or all of these defendants in an amended complaint, if plaintiff can sufficiently allege a factual basis for his allegation as to each defendant that he or she watched the attack from a safe location.

However, to the extent plaintiff seeks to allege supervisory personnel failed to protect him during the attack, see e.g., FAC ¶ 132, plaintiff is again informed of the following principles as stated in this court's previous order:

////

7

> supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).

ECF No. 8 at 4. Plaintiff has failed to state a cognizable Eighth Amendment claim against supervisory personnel defendants. Plaintiff should not include any such claims in any future amended complaint.

### D. Fourteenth Amendment Due Process Claims

#### 1. Grievance Process

Plaintiff alleges that defendants Felker, McDonald, Wright, Perez, Dangler and Jackson violated his constitutional rights by failing to properly process his grievances which prevent his access to the courts. FAC ¶¶ 1, 87, 89, 92, 102, 108, 112, 115, 146.

To the extent plaintiff seeks to state a due process claim predicated on these defendants' alleged failure to process grievances filed by plaintiff, plaintiff is informed that prisoners do not have a "separate constitutional entitlement to a specific prison grievance procedure."[2] Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)). Even the non-existence of, or the failure of prison officials to properly implement, an administrative appeals process within the prison system does not raise constitutional concerns. Mann, 855 F.2d at 640; see also Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993); Flick v. Alba, 932 F.2d 728 (8th Cir. 1991); Azeez v. DeRobertis, 568 F.Supp. 8, 10 (N.D. Ill. 1982) ("[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment"). Specifically, a failure to

---

[2] To the extent plaintiff seeks to bring this action based upon grievances filed by his family members, plaintiff lacks standing. The rights protected by the Constitution are personal rights and only the person subject to the violation has standing to bring suit. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 & n.1 (1992) (holding that an "injury in fact" "must affect the plaintiff in a personal and individual way"). If plaintiff chooses to file a second amended complaint, this claim should not be included.

8

process a grievance does not state a constitutional violation. Buckley, supra. State regulations give rise to a liberty interest protected by the Due Process Clause of the federal constitution only if those regulations pertain to "freedom from restraint" that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472 (1995).

Plaintiff has failed to state a cognizable Fourteenth Amendment claim based on the processing of his grievances. Plaintiff should not include any such claims in any future amended complaint.

### 2. Fabricated Rules Violation Report and Disciplinary Hearing

Plaintiff alleges that defendants McDonald, Wright, Ingwerson, Lewis, Alexander, and Lindsey violated his constitutional rights by preparing a fraudulent Rules Violation Report. FAC ¶¶ 110, 144. Plaintiff also alleges that defendant Griffith and P. Statti, an unnamed defendant, violated his constitutional rights by denying him requested evidence and the right to present witnesses during a disciplinary hearing.[3] FAC ¶¶ 91, 95, 142.

Prisoners have no constitutionally guaranteed right to be free from false accusations of misconduct, so the mere falsification of a report does not give rise to a claim under § 1983. See Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989); Freeman v. Rideout, 808 F.2d 949, 952 (2nd Cir. 1986). As long as a prisoner is afforded procedural due process in the disciplinary hearing, allegations of a fabricated charge generally fail to state a claim under section 1983. Hanrahan v. Lane, 747 F.2d 1137, 1139-40 (7th Cir. 1984) ("The protections against this arbitrary action, however, are the procedural due process requirements as set forth in Wolff v. McDonnell[, 418 U.S. 539, 558 (1974)]. Before a prisoner can be sanctioned, such as the plaintiff in this case was sanctioned, the prison officials must provide those procedural requirements outlined in Wolff v. McDonnell: advance written notice of violation, written statement of fact-finding, the right to present witnesses and present evidence where it would not be unduly hazardous to institutional safety."). An exception exists when the fabrication of charges infringed on the inmate's

---

[3] To the extent plaintiff seeks to name additional defendants, the court is unable to determine which defendants plaintiff intended.

substantive constitutional rights, such as when false charges are made in retaliation for an inmate's exercise of a constitutionally protected rights. See Sprouse, 870 F.2d at 452 (holding that the filing of false disciplinary charges in retaliation for a grievance filed by an inmate is actionable under section 1983).

Here, plaintiff does not allege that the false disciplinary report was issued because of plaintiff's protected conduct.  Instead, plaintiff alleges the false disciplinary report was issued "to cover up and justify constitutionally-flawed discriminatory policies and practices of ingrained racism, staged gladiator fights and set ups of African-American prisoners." FAC ¶ 144. However, plaintiff does allege that he was denied procedural due process protections during his disciplinary hearing.

With regard to plaintiff's disciplinary hearing, plaintiff alleges that defendant Griffith denied him requested evidence and the right to present witnesses during his February 12, 2008 disciplinary hearing. FAC ¶¶ 91, 142.[4]  According to plaintiff, his first rules violation report was "reissued and reheard for due process violations." FAC ¶ 92.  Plaintiff alleges P. Statti, an unnamed defendant, also denied him requested evidenced and the right to present witnesses during the adjudication of his second rules violation report on May 9, 2008. FAC ¶¶ 95, 142. Plaintiff further alleges that P. Statti relied on the report used in his first disciplinary hearing during the May 9, 2008 adjudication in violation of his due process rights.[5] FAC ¶¶ 95, 143.

Plaintiff provided copies of the February 12, 2008 and May 9, 2008 rules violation report hearings with his amended complaint. See FAC at 38-41, 53-57. With regard to the witnesses requested by plaintiff during the February 12, 2008 disciplinary hearing, the report states:

> Inmate JOHNSON was given an opportunity to request the presence of witnesses, at this hearing; at the time he was given his

---

[4] The court notes that plaintiff included two paragraphs identified with the number 142. This section refers to the second paragraph 142.

[5] Plaintiff also alleges P. Statti denied him an "investigative employee/staff assistant." FAC ¶ 95. The court notes that plaintiff provided a copy of the rules violation report with his amended complaint. In the report, plaintiff marked the "waived by inmate" box in the staff assistant section. Plaintiff signed his name in this section, and dated it April 20, 2008, and later May 1, 2008. FAC, Ex. Q. Given plaintiff's waiver, plaintiff cannot state a due process claim for failing to provide him with assistance when he declined this option at least eight days prior to the disciplinary hearing.

10

> copy of the COC-115-A. Inmate JOHNSON requested the presence of the following individuals as witnesses at this hearing.
>
> 1. Correctional Sergeant Ingwerson.
> 2. Correctional Officer Buetler
> 3. Zuniga, V-91 067
> 4. Brown, 0-72906
> 5. Hawkins, E-23776
> 6. Thompson, 0-44119
> 7. Thompson, T-98039
>
> . . . .
> The SHO made numerous attempts to contact both Sergeant Ingwerson and Officer Buetler by telephone at their residence. No contact was made with either staff member. Therefore the SHO has denied these staff members as witnesses per CCR Title 15 Section 3315 (e)(1) (C) the witnesses were unavailable.
>
> The SHO has denied Inmate Zuniga as a witness to this hearing per CCR Title 15 Section 3315(e)(1)(A) the appearance of this witness would endanger the witness.
>
> The SHO has denied Inmates Brown, Hawkins, Thompson and Thompson as witnesses to this hearing per CCR Title 15 Section 3315(e)(1)(8) the SHO has determined that these witnesses would provide no additional information.

FAC, Ex. O.  At the May 9, 2008 disciplinary hearing, plaintiff's requested witnesses were addressed as follows:

> Inmate JOHNSON was given an opportunity to request the presence of witnesses at this hearing at the time he was given his copy of the CDC 115-A. The CDC 115-A shows that inmate JOHNSON wanted "numerous" witnesses for this hearing. When this SHO asked for clarification, inmate JOHNSON stated that he wanted the same witnesses that were questioned in the original I.E. report. This SHO stated that all the requested inmate witnesses' statements were included in the current I.E. report, and their presence at this hearing would not add further to this proceeding.
>
> This SHO did have the reporting employee, Officer Alexander, present at this hearing.  However, inmate JOHNSON stated that he did not have any questions to ask of Officer Alexander, and did not want Officer Alexander called as a witness for this hearing.

FAC, Ex. Q.

Here, plaintiff states a potentially cognizable claim for relief against defendant Griffith for his allegedly being denied the right to present witnesses and evidence.  If plaintiff chooses to amend his complaint, plaintiff is advised to reallege the allegations against defendant Griffith in an amended complaint.  Further, plaintiff should include P. Statti as a named defendant if he

11

seeks to include the allegations regarding his involvement with the second rules violation report hearing.

### 4.     Access to the Courts

Plaintiff alleges that defendants Felker, McDonald, Wright and Perez have a policy of only permitting priority library users access to the law library during periods of lockdown or modified program status.  FAC ¶¶ 105-06, 114.  Plaintiff alleges this limited access is "hindering [his] efforts to properly file this complaint" because he "has been denied the minimal two hours per calendar week of requested physical law library access."  Id.  As a result, plaintiff has been unable to "file, plead, and research non[-]frivolous Constitutional claim [sic]" which has resulted in the dismissal of his original complaint with leave to amend.  Id. at ¶ 114.

"It is now established beyond doubt that prisoners have a constitutional right of access to the courts."  Bounds v. Smith, 430 U.S. 817, 821 (1977); see also Ching v. Lewis, 895 F.2d 608, 609 (9th Cir. 1990).  This right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  Bounds, 430 U.S. at 828.  However, prisoners do not have a "freestanding right" to access a law library or legal assistance.  Lewis v. Casey, 518 U.S. 343, 351 (1996).  The accessibility or adequacy of a law library is of constitutional concern only when it thwarts a prisoner from exercising his right to access the courts for the purpose of seeking redress for "claimed violations of fundamental constitutional rights."  Id. (quoting Bounds, 430 U.S. at 825).  In order to state a denial of access claim under the Fourteenth Amendment, a prisoner must show that he suffered an "actual injury" as a result of the defendants' actions by explaining how the challenged officials' acts or omissions hindered plaintiff's efforts to pursue a nonfrivolous legal claim.  Lewis, 518 U.S. at 351-55.  Actual injury may be shown if the alleged shortcomings "hindered his efforts to pursue a legal claim," such as having his complaint dismissed for "for failure to satisfy some technical requirement" or if he "suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint."  Id. at 351.  In other words, under Lewis, prison officials violate this constitutional right to access the courts if,

by their acts, they prevent an inmate from bringing, or caused an inmate to lose, an actionable claim. Id. at 356.

Here, while plaintiff has alleged that his efforts have been hindered, he fails to allege that, for example, he has been unable to timely file his federal complaint or to present his claims to this court. Therefore, plaintiff has failed to allege sufficient facts to support his right of access to the courts claim.

### E. Fourteenth Amendment Equal Protection Claim

Plaintiff alleges defendants McDonald and Wright violated his rights by placing a fraudulent report in his file "[w]hile not doing the same to Hispanic prisoners." FAC ¶ 110. Plaintiff further alleges that defendant Ramsey "target[ed]" unarmed African American prisoners during the July 28, 2007 assault "while failing to take the same measures with armed Hispanic prisoners" in violation of his Fourteenth Amendment rights. FAC ¶ 145.

The Equal Protection Clause "is essentially a direction that all persons similarly situated be treated alike." City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439 (1985). An equal protection claim may be established by showing that the defendant intentionally discriminated against the plaintiff based on the plaintiff's membership in a protected class, Lee v. City of Los Angeles, 250 F.3d 668, 686 (2001); Barren v. Harrington, 152 F.3d 1193, 1194 (1998), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (2005); Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). Here, plaintiff's conclusory allegations of racial profiling and targeting of African American inmates are insufficient to state a plausible equal protection claim. Ashcroft v. Iqbal, 556 U.S. 662, 677-81 (2009). Plaintiff should not include any such claims in any future amended complaint.

### F. Conspiracy

Plaintiff alleges that defendants Rath, Spangle, Ingwerson, Lewis, Miller, Beutler, Phang, Ramesy, Alexander, Anderson, Aston, Cook, Boone, Fannon, Guzman, Hall, Harnden, Lindsey, Look, Mayo, McBride, McCart, McMoran, Morris, Rainwater, Walker, Wheeler, Wheeler and

13

1  Young conspired to violate his constitutional rights by "implement[ing] and wilfully [sic]
2  participat[ing] in a code of silence, each knowingly falsifying a legal document to cover up and
3  justify constitutionally-flawed discriminatory policies and practices, of ingrained racism, staged
4  gladiator fights and set ups of African-American prisoners." FAC ¶¶ 82-83, 144.

   A claim for conspiracy under § 1983 requires proof of " 'an agreement or meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and "'an actual deprivation of constitutional rights,'" Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Okla., 866 F.2d 1121, 1126 (9th Cir. 1989)). While it is not necessary to prove each participant in a conspiracy know the exact parameters of the plan, they must at least share a general conspiratorial objective. Woodrum, 866 F.2d at 1126; Fonda v. Gray, 707 F.2d 435, 438 (9th Cir. 1983); Franklin, 312 F.3d at 441 (each participant must at least share the common objective of the conspiracy) (quoting United Steel Workers, 865 F.2d at 1541). Vague and conclusory allegations with no supporting factual averments are insufficient to support a claim under § 1983. Woodrum, 866 F.2d at 1126; Aldabe v. Aldabe, 616 F.2d 1089, 1090 (9th Cir. 1980); Lockry v. Kayfetz, 587 F.Supp. 631, 639 (N.D. Cal. 1984) (allegations of conspiracy must be supported by material facts, not merely conclusory statements).

   Here, the first amended complaint is devoid of any factual allegations that demonstrate an agreement or meeting of the minds between these defendants to violate plaintiff's rights, and a violation of his rights. Thus, plaintiff's allegations fail to state a claim that the named defendants conspired to violate his rights. Plaintiff should not include any such claims in any future amended complaint.

### III. Conclusion

   Notwithstanding plaintiff's failure to protect and due process claims discussed above, the court finds the remaining allegations in plaintiff's first amended complaint so vague and conclusory that it is unable to determine whether the current action is frivolous or fails to state a claim for relief. The court has determined that the first amended complaint does not contain a

short and plain statement as required by Fed. R. Civ. P. 8(a)(2).  Although the Federal Rules adopt a flexible pleading policy, a complaint must give fair notice and state the elements of the claim plainly and succinctly.  Jones v. Cmty. Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984). Plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support plaintiff's claim.  Id.  Because plaintiff has failed to comply with the requirements of Fed. R. Civ. P. 8(a)(2), the first amended complaint must be dismissed.

If plaintiff chooses to file a second amended complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  Also, the second amended complaint must allege in specific terms how each named defendant is involved.  There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation.  Rizzo, 423 U.S. 362; May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson, 588 F.2d at 743.  Furthermore, vague and conclusory allegations of official participation in civil rights violations are not sufficient.  Ivey, 673 F.2d at 268.

In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to make plaintiff's second amended complaint complete.  Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.  This is because, as a general rule, an amended complaint supersedes the original complaint.[6]  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files a second amended complaint, the original pleading no longer serves any function in the case.  Therefore, in a second amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's first amended complaint is dismissed;

2. Plaintiff's request to attach exhibits to his amended complaint (ECF No. 17) is denied;

---

[6] On May 31, 2013, plaintiff filed a request to have his original complaint exhibits attached to his amended complaint. ECF No. 17. Plaintiff is advised that the court will not consider prior pleadings, which includes prior exhibits. Loux, 375 F.2d at 57. Plaintiff's request will therefore be denied. If plaintiff chooses to file a second amended complaint, plaintiff must attach a complete set of exhibits to his new filing.

and

3. Plaintiff is granted thirty days from the date of service of this order to file a second amended complaint that complies with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice; the second amended complaint must bear the docket number assigned this case and must be labeled "Second Amended Complaint"; plaintiff must file an original and two copies of the second amended complaint; failure to file a second amended complaint in accordance with this order will result in a recommendation that this action be dismissed.

Dated: December 3, 2013

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

john2719.14amd.new