UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURICE JOHNSON, | No.  2:12-cv2719 GEB KJN P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| FELKER, et al, | |
| Defendants. | |

I.  Introduction

Plaintiff is a state prisoner proceeding without counsel.  This action is proceeding as to plaintiff's Eighth Amendment and due process claims in his first amended complaint arising from a July 28, 2007 prison riot and rules violation reports that issued thereafter.  (ECF No. 21.) Defendants' motion for summary judgment is before the court.  Plaintiff filed an opposition; defendants filed a reply.  As set forth more fully below, the undersigned recommends that defendants' motion for summary judgment be granted in part and denied in part.

II.  Defendants' Motion for Summary Judgment

Defendants move for summary judgment on the grounds that plaintiff failed to exhaust his administrative remedies prior to filing the instant action.

////

////

1

A.  Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).

Proper exhaustion of available remedies is mandatory, Booth v. Churner, 532 U.S. 731, 741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]"  Woodford v. Ngo, 548 U.S. 81, 90 (2006).  The Supreme Court has also cautioned against reading futility or other exceptions into the statutory exhaustion requirement.  See Booth, 532 U.S. at 741 n.6.  Moreover, because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal.  See Woodford, 548 U.S. at 90-93.  "[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,' [] - rules that are defined not by the PLRA, but by the prison grievance process itself."  Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford, 548 U.S. at 88).  See also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'") (quoting Jones, 549 U.S. at 218).

In California, prisoners may appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).  Most appeals progress through three levels of review.  See id. § 3084.7.  The third level of review constitutes the decision of the Secretary of the California Department of Corrections and Rehabilitation and exhausts a prisoner's administrative remedies.  See id. § 3084.7(d)(3).  A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to

2

1    the highest level of review available to him.  Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir.

2    2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002).

3           Failure to exhaust is "an affirmative defense the defendant must plead and prove."  Bock,

4    549 U.S. at 204, 216.  In Albino, the Ninth Circuit agreed with the underlying panel's decision[1]

5    "that the burdens outlined in Hilao [v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996),]

6    should provide the template for the burdens here."  Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir.

7    2014) (en banc).  A defendant need only show "that there was an available administrative remedy,

8    and that the prisoner did not exhaust that available remedy."  Albino, 747 F.3d at 1172.  Once the

9    defense meets its burden, the burden shifts to the plaintiff to show that the administrative

10   remedies were unavailable.  See Albino, 697 F.3d at 1030-31.

11          A prisoner may be excused from complying with the PLRA's exhaustion requirement if

12   he establishes that the existing administrative remedies were effectively unavailable to him.  See

13   Albino, 747 F.3d at 1172-73.  The PLRA requires that an inmate exhaust only those

14   administrative remedies "as are available."  42 U.S.C. § 1997e(a).  For a remedy to be

15   "available," there must be the "possibility of some relief . . . ."  Booth, 532 U.S. at 738.  A

16   remedy is "available" to inmates when it is "capable of use; at hand."  Albino, 747 F.3d at 1171,

17   quoting Brown v. Valoff, 422 F.3d 926, 937 (9th Cir. 2006).  For example, where prison officials

18   improperly screen out inmate grievances, they render administrative remedies effectively

19   unavailable.  Sapp v. Kimbrell, 623 F.3d 813, 823, 824 (9th Cir. 2010) (To demonstrate such an

20   exception, "the inmate must establish (1) that he actually filed a grievance or grievances that, if

21   pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that

22   he seeks to pursue in federal court, and (2) that prison officials screened his grievance or

23   grievances for reasons inconsistent with or unsupported by applicable regulations.").  See also

24   Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010) (excusing an inmate's failure to exhaust

25   because he was precluded from exhausting administrative remedies by a warden's mistaken

26   _____

27   [1]  See Albino v. Baca, 697 F.3d 1023, 1031 (9th Cir. 2012).  The three judge panel noted that "[a]
     defendant's burden of establishing an inmate's failure to exhaust is very low."  Id. at 1031.
     Relevant evidence includes statutes, regulations, and other official directives that explain the
28   scope of the administrative review process.  Id. at 1032.

1  instruction to him that a particular unavailable document was needed for him to pursue his inmate

2  appeal); Marella, 568 F.3d at 1024 (excusing an inmate's failure to exhaust because he did not

3  have access to the necessary grievance forms to timely file his grievance).  Plaintiff bears the

4  burden of demonstrating that the administrative remedies were rendered unavailable to him

5  through no fault of his own.  Sapp, 623 F.3d at 822-23; Nunez, 592 F.3d at 1224; Brown, 422

6  F.3d at 939-40.

7  　　　　Where a prison system's grievance procedures do not specify the requisite level of detail

8  for inmate appeals, Sapp, 623 F.3d at 824, a grievance satisfies the administrative exhaustion

9  requirement if it "alerts the prison to the nature of the wrong for which redress is sought."  Griffin

10  v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009).  In California, "regulations require only that an

11  inmate 'describe the problem and the action requested.'"  Sapp, 623 F.3d at 824, quoting Cal.

12  Code Regs. tit. 15, § 3084.2(a).)  "A grievance need not include legal terminology or legal

13  theories unless they are in some way needed to provide notice of the harm being grieved.  A

14  grievance also need not contain every fact necessary to prove each element of an eventual legal

15  claim.  The primary purpose of a grievance is to alert the prison to a problem and facilitate its

16  resolution, not to lay groundwork for litigation."  Griffin, 557 F.3d at 1120.

17  　　　　If under the Rule 56 summary judgment standard, the court concludes that plaintiff has

18  failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice.

19  Wyatt v. Terhune, 315 F.3d 1108, 1120, overruled on other grounds by Albino, 747 F.3d 1162.

20  　　　　B.  Legal Standard for Summary Judgment

21  　　　　Summary judgment is appropriate when it is demonstrated that the standard set forth in

22  Federal Rule of Civil procedure 56 is met.  "The court shall grant summary judgment if the

23  movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

24  judgment as a matter of law." Fed. R. Civ. P. 56(a).[2]

25  　　　　　　　Under  summary  judgment  practice,  the  moving  party  always
    　　　　　　　bears the initial responsibility of informing the district court of the
26  　　　　　　　basis  for  its  motion,  and  identifying  those  portions  of  "the

27  [2]  Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10, 2010.
    However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56, "[t]he
28  standard for granting summary judgment remains unchanged."

> pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)).  "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case."  Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return

////

////

5

1    a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436
2    (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d
3    1564, 1575 (9th Cir. 1990).

4         In the endeavor to establish the existence of a factual dispute, the opposing party need not
5    establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual
6    dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
7    trial." T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce
8    the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
9    Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963
10   amendments).

11        In resolving a summary judgment motion, the court examines the pleadings, depositions,
12   answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R.
13   Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at
14   255.  All reasonable inferences that may be drawn from the facts placed before the court must be
15   drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences
16   are not drawn out of the air, and it is the opposing party's obligation to produce a factual
17   predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F.
18   Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to
19   demonstrate a genuine issue, the opposing party "must do more than simply show that there is
20   some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could
21   not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for
22   trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

23        By contemporaneous notice provided on August 18, 2014, (ECF No. 37), plaintiff was
24   advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal
25   Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc);
26   Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

27   ////

28   ////

C. Facts[3]

1.  On July 28, 2007, violence broke out[4] on High Desert State Prison ("HDSP") B Facility yard.

2.  Plaintiff sustained two cut/laceration/slash-type injuries to his lower back as a result of the violence on July 28, 2007.[5]  Plaintiff also alleges mental suffering.  (ECF No. 44 at 4.)

3.  During the violent attacks on July 28, 2007, several Correctional Officers observed plaintiff kicking another inmate, who was on the ground, in the head and chest area.[6]

4.  On August 8, 2007, plaintiff received a CDC 115 "Rules Violation Report" ("RVR") for attempted murder of an inmate during the events of July 28, 2007.

5.  On September 23, 2007, plaintiff filed a CDC 602 Inmate Appeal alleging, *inter alia*, that the HDSP Correctional Officers failed to protect him during the violence that occurred on July 28, 2007.  (ECF No. 21 at 127-29.)  Plaintiff stated that Officers Ingwerson, Lewis, Lindsey, Alexander, Ramsey, Aston, Boone, Cook, Fannon, Guzman, Hall, Harnden, Look, McCart, McBride, Rainwater, Spangle, Rath, McMoran, Walker, Mayo, Anderson, Wheeler, and Young "violated [plaintiff's] Eighth Amendment right guaranteed by the United States Constitution to be free from cruel and unusual punishment" by showing "deliberate indifference and total disregard for [plaintiff's] custodial security and personal

---

[3]  For purposes of the instant motion for summary judgment, the court finds the following facts undisputed.  Documents submitted as exhibits are considered to the extent they are relevant, and despite the fact that they are not authenticated because such documents could be admissible at trial if authenticated.

[4]  Plaintiff disputes defendants' characterization of the violent events of July 28, 2007, as a "riot."  Plaintiff contends that overcrowding and other conditions caused a "known increased, substantial risk of violence resulting in a coordinated, planned, unprovoked attack with stabbing weapons on African American inmates perpetrated by Northern Hispanic prisoners."  (ECF No. 44 at 4.)  In light of plaintiff's objection, the court refrains from using the term "riot."

[5]  Plaintiff contends he sustained two "stab wounds and a slash across his lower back" (ECF No. 44 at 4), but the medical record provided by plaintiff reflects two cut/laceration/slash injuries to plaintiff's lower back.  (ECF No. 21 at 54.)

[6]  Plaintiff contends these correctional officers "mistakenly" observed this during their review of the videotape of the July 28, 2007 incident.  (ECF No. 44 at 4.)

safety when instead of coming to [plaintiff's] aid, they ran back into building housing units, retreated and hid behind fences, and essentially watched as [plaintiff] was . . . attacked with deadly weapons by other prisoners for several minutes." (ECF No. 21 at 128-29.) Plaintiff also alleged that a number of these officers violated various prison regulations. (ECF No. 21 at 129.)

6. Plaintiff's September 23, 2007 appeal was not assigned a log number. On September 26, 2007, plaintiff's appeal was screened out for three reasons: (a) "the appeal is incomplete or necessary supporting documents are not attached," missing the "entire completed 115;" (b) the "15-Day Time limit for submitting the appeal is exceeded," with the dates "7/28/07 / 9/23/07" handwritten on the form; and (c) the appeal was not accepted as a staff complaint; "issue incident 7/28/07 & RVR." (ECF No. 21 at 131.)

7. On September 30, 2007,[7] plaintiff wrote a new 602 appeal, and re-submitted the September 23, 2007 appeal, asking that it be accepted and processed. (ECF No. 21 at 133.) HDSP Appeals received this resubmission on October 2, 2007. Plaintiff noted that he had submitted a 602 appeal on September 23, 2007, against several officers alleging their failure to protect him, as well as various violations of departmental regulations. (ECF No. 21 at 133.) Plaintiff asked that his original staff complaint be processed so he could exhaust administrative remedies through the third level and seek review in court. (ECF No. 21 at 133.) Plaintiff noted that his complaint had "nothing to do with a rules violation report." (ECF No. 21 at 134.)

8. Plaintiff's September 30, 2007 appeal was also screened-out. (ECF No. 21 at 136.) The screening form is marked "Duplicate," and the duplicate appeal section notes: "Your first appeal was screened-out and returned to you with instructions" and the dates "on 9/26/07

---

[7] It is unclear why defendants refer to plaintiff's September 30, 2007 appeal as an October 2, 2007 appeal, the date it was received by HDSP Appeals. Plaintiff's earlier appeal, signed September 23, 2007, was received by HDSP on September 25, 2007, but defendants refer to such appeal as plaintiff's September 23, 2007 appeal. Because plaintiff signed the re-submitted appeal on September 30, 2007, the court refers to this appeal as plaintiff's September 30, 2007 appeal. Defendants' Statement of Undisputed Facts No. 7 cites the same exhibit relied on by the court -- Plaintiff's Ex. AA located at ECF No. 21 at 133.

and 10/2/07" are handwritten on the form.  (ECF No. 21 at 136.)  Under "other," is handwritten "[t]he other appeal was not accepted as a staff complaint."  (Id.) [8]  The form is dated October 2, 2007.  (Id.)

9.   Plaintiff submitted a second 602 appeal alleging that HDSP correctional officers had failed to protect plaintiff during the events of July 28, 2007.  Appeals Coordinator Clark declares this second 602 appeal was submitted on October 2, 2007; plaintiff states it was submitted on September 30, 2007, apparently referring to the document addressed in paragraph no. 8 above.  (ECF No. 44 at 5.)  Mr. Clark did not refer to a document in his declaration, and did not provide a copy of the pertinent screened out appeals from his database (ECF No. 37-3 at 2).  Mr. Clark's declaration and defense counsel's statement of undisputed facts did not cite to a document.  However, appended to plaintiff's original complaint is a second screening form dated October 2, 2007.  (ECF No. 1 at 88.)

10.   The second October 2, 2007 screening form marks the box that "the appeal concerns an anticipated action or decision," asking in a handwritten note:  "Has RVR been heard?" and marks the box that the appeal as "incomplete," noting the missing "entire completed 115."  (ECF No. 1 at 88.)  Under "other" is handwritten:  "This appeal was not accepted as a staff complaint issue incident 7/28/07 RVR."  (ECF No. 1 at 88.)

11.   On February 12, 2008, Defendant Senior Hearing Officer (SHO) Griffith adjudicated the August 8, 2007 RVR Log No. FB-07-07-101 (ECF No. 21 at 103).  (ECF No. 37-4 at 18-21.)

12.   At the conclusion of the February 12, 2008 hearing, plaintiff was found guilty of the lesser charge of battery on an inmate by means of force likely to produce serious injury.  (ECF No. 37-4 at 20.)

////

////

---

[8]  Appeals Coordinator D. Clark declares that this appeal was "screened-out because reviewing staff determined that the CDC 115 RVR that was the subject of the appeal had not yet occurred and it appeared to reviewing staff that plaintiff was trying to appeal the results of the RVR hearing."  (ECF No. 37-3 at 5.)  However, the screening form does not note this reason.

13.  On March 9, 2008, petitioner signed a 602 appeal form which was received by HDSP Appeals on March 11, 2008, and assigned Appeal Log No. HDSP-D-08-00675.  (ECF No. 37-4 at 9.)

14.  In Appeal Log No. HDSP-D-08-00675, plaintiff alleged that Senior Hearing Officer ("SHO") Lt. Griffith violated plaintiff's due process rights by having a "predetermined belief" that plaintiff was guilty because Lt. Griffith ordered plaintiff placed into administrative segregation ("Ad Seg") pending resolution of the August 8, 2007 RVR, and denied plaintiff's request for evidence and witnesses.  (ECF No. 37-4 at 9-11.)  Plaintiff also alleged that African American prisoners were the victims of a coordinated, planned attack with weapons, that officers did nothing to stop the attacks, and that plaintiff and his fellow African Americans were only trying to defend themselves.  (ECF No. 37-4 at 11.)

15.  Appeal Log No. HDSP-D-08-0675 requested that the RVR be dismissed in the interest of justice, that all loss of good time credits be restored, for an audit to be conducted on RVR hearings of African American inmates adjudicated by Defendant Griffith, and that plaintiff be transferred to a California State Prison, Lancaster.  (ECF No. 37-4 at 9.)

16.  Due to the nature of the grievance set forth in Appeal Log No. HDSP-D-08-0675, it bypassed the first level of review and went directly to second level review.

17.  On April 3, 2008, plaintiff's Appeal Log No. HDSP-D-08-0675 was partially granted at the second level in that the RVR was ordered to be reissued and reheard by a SHO other than Defendant Griffith.  (ECF No. 37-4 at 7.)

18.  The second level review of Appeal Log No. HDSP-D-08-0675 denied Plaintiff's request that the RVR be dismissed and that plaintiff be transferred to California State Prison, Lancaster.  (ECF No. 37-4 at 8.)

19.  The second level review of Appeal Log No. HDSP-D-08-0675 informed plaintiff that "this issue may be submitted for a Director's Level of Review if desired."  (ECF No. 21 at 119.)  Plaintiff did not appeal Log No. HDSP-D-08-0675 to the third level of review.

////

////

10

20. On April 15, 2008, pursuant to Chief Deputy Warden Wright's April 7, 2008 order, RVR FB-07-07-101 was re-issued by Correctional Officer L. Alexander based on plaintiff's alleged role in the events of July 28, 2007.  (ECF No. 37-4 at 36.)[9]

21. On May 9, 2008, Defendant SHO Statti adjudicated the April 15, 2008 reissued RVR FB-07-07-0101R.  (ECF No. 21 at 121.)

22. At the conclusion of the May 9, 2008 hearing, plaintiff was found guilty of battery on an inmate likely to produce serious injury.  (Id.)

23. On June 16, 2008,[10] plaintiff submitted a CDC 602 inmate appeal regarding the May 9, 2008 RVR hearing, Appeal Log No. 08-D-08-01669.  (ECF No. 37-4 at 33.)

24. In Appeal Log No. 08-D-08-01669, plaintiff again alleged violation of his due process rights:  (a) plaintiff was not provided a copy of the re-issued RVR Log No. FB 07-07-101R until April 20, 2008, a full seventeen days after the discovery of information leading to the charges" (ECF No. 37-4 at 33-35); (b) plaintiff was denied an investigative employee, never spoke with Officer Hougland regarding RVR Log No. FB-07-07-0101 or FB-07-07-0101R, and was not provided with the investigative employee's report before the hearing; and was not allowed to ask questions of his witnesses.  Plaintiff claimed the questions asked in the original I.E. report were those of Correctional Officer S. Fish, not plaintiff; and (c) Plaintiff was denied the presence of witnesses and denied the right to submit witness statements.  (ECF No. 37-4 at 35.)

////

---

[9]  In the statement of undisputed facts, defendants claim that the RVR for the July 28, 2007 riot was reissued on April 5, 2008, citing Exhibit C to Mr. Clark's declaration.  (ECF No. 37-2 at 4.) However, Mr. Clark's Exhibit C contains copies of Appeal Log HDSP-B-08-01623 raising unrelated property claims by plaintiff.  (ECF No. 37-4 at 24-28.)  In plaintiff's response to defendants' undisputed facts, plaintiff "denies that on April 5, 2008, the RVR for the July 28, 2007 riot was reissued," without further explanation.  (ECF No. 44 at 7:22-24.)  Plaintiff cites to Exhibit CC appended to his amended complaint; however, Exhibit CC is a July 29, 2008 second level appeal response in Appeal Log No. HDSP-D-08-01669.  (ECF No. 21 at 138.)  In addition, in plaintiff's Exhibit X, he appends a copy of RVR-Part C, which notes that the RVR is "a reissue/rehear."  (ECF No. 21 at 121.)

[10]  Plaintiff's appeal was dated May 12, 2008, but plaintiff does not dispute the June 16, 2008 "submitted" date, which appears to be the date the appeal was received.  (ECF No. 37-4 at 33.)

25.  Appeal Log No. 08-D-08-01669 requested that the RVR Log No. FB-07-07-0101R be dismissed in the interest of justice, that all loss of good time credits be restored, and that an external and internal investigation of California Department of Corrections and Rehabilitation ("CDCR") staff personnel actions during the events of July 28, 2007 be conducted.

26.  Appeal Log No. 08-D-08-01669 bypassed the first level of review and went directly to second level review.

27.  On July 29, 2008, in Appeal Log No. 08-D-08-01669, the second level review denied plaintiff's request to dismiss the RVR and to restore the loss of credits.  (ECF No. 37-4 at 31.)  Plaintiff's request for an external and internal investigation was "considered granted in that there has been both . . . external and internal investigations into the actions of HDSP personnel in relation to the riot dated July 28, 2007."[11]  (ECF Nos. 21 at 139; 37-4 at 31.)  The second level review advised plaintiff "that this issue may be submitted for a Director's Level of Review if dissatisfied with the 2nd level response."  (ECF No. 37-4 at 32.)

28.  On July 30, 2008, for the third time, plaintiff resubmitted the September 23, 2007 appeal claiming staff had failed to protect him during the events of July 28, 2007.[12]  (ECF No. 21 at 127 (see "Received" stamp at bottom right hand corner).)

29.  Plaintiff's July 30, 2008 appeal was screened out for being untimely, i.e., more than fifteen days after the incident date.  (ECF Nos. 1 at 87; 38 at 41.)

30.  On December 14, 2008, plaintiff submitted Appeal Log No. HDSP-D-08-01669 to the third level of review, noting that "the delay is because [plaintiff] was placed in ad seg on a separate issue and was recently issued [his] property."  (ECF No. 38 at 63.)  Inmate Appeals received such third level appeal on December 19, 2008.  (ECF No. 37-6 at 3.)

---

[11]  Plaintiff denies defendant's undisputed fact 27, but fails to explain why.  (ECF No. 44 at 8.)

[12]  Plaintiff denies defendant's undisputed fact 28, but provided a copy of the September 23, 2007 appeal which has plaintiff's "09-23-07" date blackened out and bears the HDSP Appeals received date of July 30, 2008.  (ECF No. 21 at 127.)

31.  Plaintiff's Appeal Log No. HDSP-D-08-01669 was screened out at the third level because plaintiff failed to submit the appeal to the third level within fifteen working days of the second level decision.  (ECF No. 21 at 142.)

32.  Plaintiff did not submit any appeals that were accepted for third level review concerning his claims in this action.  (ECF No. 37-6 at 2-3.)

D.  Discussion

1.  Plaintiff's Eighth Amendment Claims

Before the court addresses what transpired subsequent to plaintiff's initial appeal, the court must first determine whether plaintiff's initial appeal was timely and, if it was untimely, whether plaintiff may be excused from exhausting his administrative remedies.

As set forth above, an inmate properly exhausts his administrative remedies where he has availed himself of the state's administrative process through the highest available administrative level.  Butler, 397 F.3d at 1183.  Inmates must file their grievance claims and appeals in the place, at the time, and in the manner the administrative rules require.  Woodford, 548 U.S. at 94; see, e.g., Cal. Code Regs., tit. 15, § 3084.6(c) and 3084.3(c)(6) (an initial grievance must be submitted within fifteen working days of the event giving rise to the grievance) (ECF No. 21 at 131).  The appeals coordinator may reject untimely grievances.  Cal. Code Regs., tit. 15, § 3084.6(c).  A claim rejected as untimely or as otherwise procedurally defective remains unexhausted for PLRA purposes.  Woodford, 548 U.S. at 83-86, 90-91, 103 (defective claims or appeals rejected as defective do not satisfy the exhaustion requirement, considering "the informality and relative simplicity of prison grievance systems like California's").  The obligation to exhaust 'available' remedies persists as long as some remedy remains 'available.'"  Brown, 422 F.3d at 935, citing Booth, 532 U.S. 731 (a prisoner must "press on to exhaust further levels of review" until he has either received all "available" remedies at an intermediate level of review "or been reliably informed by an administrator that no remedies are available").  Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.  Woodford, 548 U.S. at 90-91.

13

However, the Ninth Circuit has held California prison regulations "explicitly create an exception to the timely filing requirement.  If [a prisoner] was unable to file within the fifteen-day filing period, his failure to file timely does not defeat his claim."  Marella, 568 F.3d at 1027.  Nevertheless, [i]f a prisoner had full opportunity and ability to file a grievance timely, but failed to do so, he has not properly exhausted his administrative remedies."  Id. at 1028 (citing Woodford, 548 U.S. at 88).

As set forth above, it is undisputed that plaintiff's initial appeal, signed by plaintiff on September 23, 2007, and received by HDSP Appeals on September 26, 2007, was not filed within fifteen days from July 28, 2007, the date on which plaintiff alleged officers failed to protect him in violation of the Eighth Amendment.  On August 20, 2014, plaintiff filed a declaration[13] in which he states:

> On August 8, 2007, . . . plaintiff was placed in administrative segregation confined for 23 hours a day in a cell roughly 60 feet square, and deprived of all of his personal property, very limited, restricted access to Ad./Seg. law library and available legal resources, i.e. books, dictionary, reference guides, CCR Title 15 and D.O.M.

(ECF No. 38 at 3.)  Plaintiff provides no other factual allegations addressing why he was unable to file the appeal within fifteen days from July 28, 2007.

Defendants contend that plaintiff's initial appeal was untimely filed, and argue that plaintiff fails to demonstrate that his placement in administrative segregation excused him from timely filing the appeal.  Defendants argue that CDCR regulations provide that conditions in Ad Seg shall approximate the conditions of general population.  (ECF No. 45 at 5, citing Cal. Code Regs., tit. 15, § 3343(a).)  Ad Seg inmates are not restricted from sending or receiving mail,

---

[13]  Plaintiff did not file a declaration with his October 1, 2014 opposition to the motion for summary judgment.  (ECF No. 44.)  However, on August 20, 2014, after defendants filed the instant motion, plaintiff filed a declaration in support of his motion to modify the discovery and scheduling order.  (ECF No. 38.)  Plaintiff's declaration was signed on August 17, 2014, one day prior to the filing of the motion for summary judgment, yet contains statements pertinent to the issue of exhaustion of administrative remedies.  Because plaintiff is proceeding pro se, and his statement concerning his placement in Ad Seg on August 8, 2007, tracks his unverified statement contained in his opposition (ECF No. 44 at 13), the undersigned has considered the declaration.

14

1   except that incoming packages may be limited in quantity and restricted to property allowed in

2   Ad Seg.  (ECF No. 45 at 6, citing Cal. Code Regs., tit. 15, § 3343(e).)  Ad Seg inmates generally

3   have access to institutional programs and services.  (ECF No. 45 at 6, citing Cal. Code Regs., tit.

4   15, § 3343(j).)

5           This court finds that plaintiff's appeal was untimely filed, and that plaintiff failed to

6   adduce facts or evidence demonstrating that he did not have an opportunity to file a timely appeal.

7   First, plaintiff was not placed into Ad Seg until August 8, 2007, eleven days after the July 28,

8   2007 incident.  Plaintiff fails to explain why he could not prepare and file his appeal during the

9   eleven day period prior to his Ad Seg placement, and plaintiff does not argue that prison officials

10  interfered with his ability to timely file his initial appeal.  Second, plaintiff's description of the

11  conditions in Ad Seg, standing alone, fails to demonstrate that he was unable to timely file his

12  appeal while he was housed in Ad Seg the following four days.  Plaintiff does not specifically

13  address how Ad Seg conditions may have interfered with his ability to timely file his initial

14  appeal, or explain his efforts, if any, taken to comply with the fifteen day deadline.  Third, in fact

15  plaintiff filed his initial appeal "while confined in Ad Seg."  (ECF No. 38 at 3.)  Fourth, plaintiff

16  argues his September 23, 2007 appeal was timely because he believed he had one year to file a

17  "Citizen's Complaint."  (ECF No. 44 at 14-15.)

18          The PLRA mandates proper exhaustion, which means that plaintiff was required to

19  comply with the administrative grievance system provided by the CDCR.  See Woodford, 548

20  U.S. at 90-91 (proper exhaustion "demands compliance with an agency's deadlines and other

21  critical procedural rules because no adjudicative system can function effectively without

22  imposing some orderly structure on the course of its proceedings.").  A prisoner may not use a

23  citizen's complaint to exhaust his or her administrative remedies properly as it is not part of the

24  CDCR's prescribed grievance process.  See Cal. Code Regs. tit. 15, § 3084.5.  Indeed, section

25  3084.9 specifically states that "[a] staff complaint filed by an inmate or parolee shall be processed

26  as an appeal pursuant to this Article, not as a citizen's complaint."  Cal. Code Regs. tit. 15

27  § 3084.9.  Moreover, section 3391 provides that

28  ////

> [a]n allegation by a *non-inmate* of misconduct by a departmental peace officer as defined in section 3291(b), is a citizen's complaint pursuant to Penal Code section 832.5.   Citizen's complaints alleging misconduct of a departmental peace officer shall be filed within twelve months of the alleged misconduct.

Cal. Code Regs. tit. 15 § 3391 (emphasis added).  As explained by another district court in 2005,

> it is no longer sufficient for an inmate simply to give prison officials notice of the complaint by cooperating with other investigations, as was sufficient in such pre-PLRA "substantial compliance" cases.  See Patsy v. Board of Regents, 457 U.S. 496, 511, 102 S. Ct. 2557, 73 L.Ed.2d 172 (1981).  Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999). In the post-PLRA cases courts have emphasized that "the exhaustion requirement in § 1997e(a) is directed at exhausting the prisoner's administrative remedies," and that Use of Force or other investigations do not satisfy the PLRA's dictates.  See Garrett v. Hawk, 127 F.3d 1263, 1265 (10th Cir. 1997) ("Congress amended § 1997e to make the exhaustion provisions mandatory rather than discretionary."). In determining whether the inmate has exhausted his or her remedies, we thus look to the inmate's grievance, not to other information compiled in other investigations.

Townes v. Paule, 407 F. Supp.2d 1210, 1218 (S.D. Cal. 2005).  Therefore, even if plaintiff was attempting to file a citizen's complaint, such efforts would not serve to exhaust his administrative remedies as required under the PLRA.  In addition, plaintiff's alleged misapprehension of the filing deadline does not excuse his untimely filing.  See, e.g., Evans v. Woodford, 2008 WL 5114653 (E.D. Cal. Dec. 4, 2008) (Prisoner's oversight, resulting in his filing the wrong type of citizen's complaint, has no impact on court's determination that prisoner failed to exhaust administrative remedies because prisoner is required to comply with the administrative grievance system provided by the CDCR); Townes, 407 F. Supp.2d at 1218 (S.D. Cal. 2005) (filing of citizen complaint against guard did not exhaust administrative remedies).

Moreover, this case is distinguishable from Marella, 568 F.3d at 1024, wherein the prisoner was excused from his failure to exhaust because he did not have access to the necessary grievance forms to timely file his grievance.  Unlike the prisoner in Marella, 568 F.3d at 1027, who was hospitalized for two nights, and subsequently put in the infirmary, plaintiff's injuries do not appear to have impeded his ability to timely file the appeal (ECF No. 21 at 54), and plaintiff made no such allegation.  Unlike Marella, 568 F.3d at 1028, plaintiff does not argue that he lacked both access to the appropriate forms and knowledge of the procedural requirements.  In

16

1    addition, CDCR records provided by defendants reflect that plaintiff has been incarcerated since

2    at least 1993, and is a seasoned grievance filer.  Since December 10, 1993, plaintiff has had 27

3    appeals accepted at the third level of review, three of which were for "staff complaints" filed prior

4    to 2007.  (ECF No. 37-6 at 2-3.)  The fact that plaintiff successfully pursued three prior staff

5    complaints to acceptance at the third level of review raises an inference that plaintiff was aware

6    of the process required for raising such staff complaints, including applicable time restraints.

7    Plaintiff adduced no evidence to rebut such an inference.[14]

8         In his opposition, plaintiff claims that on September 30, 2007, he "appealed the screen-

9    out" because he was "bewildered and confused" and believed the instructions were in error.

10   (ECF No. 44 at 14.)  Plaintiff noted that his appeals were not concerning a disciplinary RVR.[15]

11   (ECF No. 21 at 133-34.)  However, plaintiff did not address the timeliness issue, other than to

12   erroneously contend he had one year to file the appeal, either in his renewed appeal, or in his

13   arguments concerning the second appeal in the instant motion.  (ECF Nos. 21 at 133-34; 44 at

14   14.)  Plaintiff also did not address the duplicative issue.  Smiley v. Martinez, 2010 WL 309459,

15   *3 (N.D. Cal. 2010) (plaintiff did not timely challenge the screening out of his appeals based on

16   untimeliness and duplication during the administrative appeal process).

17   ////

18

---

19   [14]  Plaintiff refers to a "Citizen's Complaint" throughout his opposition, and also claims that his
     third attempt to file a 602 appeal on this issue was submitted on July 27, 2008, "the eve of the one

20   (1) year actual time limit for a prisoner to file a "Citizen's Complaint."  (ECF No. 44 at 15.)  In
     his declaration, plaintiff contends that his September 23, 2007 appeal was a timely-filed "CDC

21   602 Appeal 'Citizen's Complaint.'"  (ECF No. 38 at 3.)  Plaintiff's continued references to a
     Citizen's Complaint supports this court's finding that plaintiff had an opportunity to file a timely

22   appeal but did not do so because he believed he had one year to file a citizen's complaint.

23
     [15]  The screening form for plaintiff's initial appeal did request a copy of "the entire completed

24   115," and as plaintiff continued to press his "602 appeal Citizen's Complaint," it appears that the
     appeals coordinator misunderstood plaintiff's appeal as a challenge to an RVR that had not yet

25   issued.  However, such confusion has no bearing on the time limit for filing appeals or on the
     appeal process required to exhaust administrative remedies prior to filing suit in federal court.

26   Plaintiff's initial appeal was properly rejected as untimely, and plaintiff's second appeal was
     properly rejected as a duplicate of plaintiff's initial appeal.  (ECF No. 21 at 131, 136.)  The

27   alleged failure to protect claim was based on the events of July 28, 2007, and plaintiff's initial
     appeal was not filed within the fifteen day deadline.

28

1    A prisoner cannot satisfy the exhaustion requirement "by filing of an untimely or

2    otherwise procedurally defective administrative grievance or appeal." Woodford, 548 U.S. at 84.

3    A prisoner must complete the administrative review process in accordance with the applicable

4    procedural rules, including deadlines, as a precondition to bringing suit in federal court. See id. at

5    83-84.  Plaintiff did not.  His inmate appeals were properly rejected as untimely and duplicative.

6    Plaintiff did not receive a director's level decision, as required for exhaustion of administrative

7    remedies by a California prisoner.  Defendants have carried the burden to prove that plaintiff did

8    not satisfy the exhaustion requirement with regard to his Eighth Amendment claims.

9         Accordingly, because plaintiff's initial appeal was untimely filed, and plaintiff failed to

10   adduce facts or evidence demonstrating that he was unable to timely file his appeal, defendants'

11   motion for summary judgment should be granted and plaintiff's Eighth Amendment and

12   overcrowding claims should be dismissed without prejudice.  See Woodford, 548 U.S. at 88 (If a

13   prisoner had full opportunity and ability to file a grievance timely, but failed to do so, he has not

14   properly exhausted his administrative remedies.)  Because resolution of plaintiff's Eighth

15   Amendment claims turns on plaintiff's initial appeal and his second appeal, the court need not

16   address the parties' arguments concerning subsequent appeals.  (ECF Nos. 44 at 15-16; 45 at 3.)

17                    2.  Plaintiff's Due Process Claims re RVR hearing

18        In his fourth claim for relief, plaintiff alleges that defendants Griffith and Statti denied

19   plaintiff's due process rights by denying plaintiff the opportunity to call witnesses and present

20   evidence.  (ECF No. 21 at 12.)  Defendants contend that plaintiff failed to exhaust his due process

21   claims as to both RVR hearings because plaintiff failed to timely appeal both claims through the

22   director's level of review.  (ECF No. 37-1 at 8.)  Defendants argue that even though both claims

23   were partially granted at the second level, plaintiff was required to timely appeal both claims

24   through the third level of review because plaintiff only received some of the relief he was

25   seeking.  (ECF No. 37-1 at 8.)  Defendants argue that plaintiff is seeking damages, and because

26   neither second level decision awarded plaintiff such relief, he was obligated to submit both claims

27   to third level review.  (ECF No. 37-1 at 8, citing Booth, 532 U.S. at 734.)

28   ////

An inmate complaining about staff misconduct need not exhaust further levels of review upon being deemed to have exhausted all available remedies.  Brown, 422 F.3d at 937-40 (citing Booth, 532 U.S. at 736 n.4[16]).  However, "[a]n inmate has no obligation to appeal from a grant of relief, or a partial grant that satisfies him, in order to exhaust his administrative remedies." Harvey v. Jordan, 605 F.3d 681, 685 (9th Cir. 2010) (claim exhausted where inmate requested either new disciplinary hearing or that charges be dismissed and was granted new hearing at lower level, despite the fact that he did not further appeal that "partial" grant).

a.  Appeal Log No. HDSP-D-08-0675

As set forth above, Appeal Log No. HDSP-D-08-0675 was plaintiff's administrative appeal concerning the first hearing on the RVR resulting from the events of July 28, 2007. Plaintiff believed no further appeal of Log No. HDSP-D-08-0675 was required because plaintiff was granted a new hearing.  (ECF No. 44 at 7.)  Defendants rely on Booth, 532 U.S. 734, for their position that plaintiff was still required to pursue his claim through the third level of review.

However, Booth is inapposite because Booth addressed the question of whether an inmate seeking only money damages must complete a prison administrative process.  Id., 532 U.S. at 733.  Here, plaintiff was not just seeking money damages through the administrative process; rather, plaintiff was seeking relief from an RVR based on alleged due process violations in the form of a new hearing or dismissal of the RVR.

In Brown, the Ninth Circuit held that "a prisoner need not press on to exhaust further levels of review once he has either received all 'available' remedies at an intermediate level of review or been reliably informed by an administrator that no remedies are available."  Brown, 422 F.3d at 935.  The Ninth Circuit concluded that the CDCR did not establish that once it had ordered an investigation into the alleged misconduct through the separate "staff complaint" process, it had any remaining "authority to act on the subject of the complaint through the

---

[16]  "Without the possibility of some relief, the administrative officers would presumably have no authority to act on the subject of the complaint, leaving the inmate with nothing to exhaust.  The parties do not dispute that the state grievance system at issue in this case has authority to take some responsive action with respect to the type of allegations Booth raises."  Booth, 532 U.S. at 736 n.4.

19

grievance procedure.  The second level response form as to inmate Brown did not "counsel that any further review was available."  Id., 422 F.3d at 937.

A partially granted finding is not dispositive of the exhaustion process when further administrative relief is available.  Id.  However, in Harvey, 605 F.3d at 684-85, the Ninth Circuit held that the prisoner had exhausted administrative remedies where his inmate appeal received a "partial grant" of his first request and that "[a]n inmate has no obligation to appeal from a grant of relief, or a partial grant that satisfies him, in order to exhaust his administrative remedies."  Id.  See also Smith v. Allison, 2014 WL 5320230, *8-9 (E.D. Cal. Oct. 17, 2014) (regarding inmate appeal #2564, where request was partially granted at the second level, requiring the RVR to be reissued and re-heard, defendants not entitled to summary judgment because plaintiff had exhausted his available administrative remedies).  Here, it appears plaintiff was satisfied with the partial grant of relief inasmuch as he filed no further appeals in Appeal Log No. HDSP-D-08-0675.  Defendants adduce no evidence or authority to the contrary.

Thus, plaintiff's due process claims set forth in Appeal Log No. HDSP-D-08-0675 were exhausted prior to filing the instant action, and defendant Griffith is not entitled to summary judgment thereon.

b. Appeal Log No. 08-D-08-01669

Following the May 9, 2008 hearing on the re-issued RVR Log No. FB 07-07-101R, plaintiff filed Appeal Log No. 08-D-08-01669, alleging due process violations against defendant Statti, including the denial of an investigative employee, the presence of witnesses, and the right to submit witness statements at the hearing.  (ECF No. 37-4 at 35.)  Plaintiff sought dismissal of the RVR, restoration of lost good time credits, and an external and internal investigation.  On July 29, 2008, plaintiff's appeal was partially granted at the second level, based on investigations that were conducted.  (ECF No. 21 at 139.)  However, plaintiff's request to dismiss the RVR and restore the loss of credits was denied.  (ECF No. 37-4 at 31.)  Thus, unlike plaintiff's earlier due process appeal, remedies remained available following the second level response, and plaintiff was required to appeal to the third level of review.  Prison officials properly informed plaintiff that he could submit his appeal for a Director's Level of Review if plaintiff was dissatisfied with

the second level response.  (ECF No. 21 at 140.)  Plaintiff ultimately sought third level review on December 14, 2008 (ECF No. 38 at 63), but it was screened out as untimely (ECF No. 21 at 142).

Here, plaintiff claims that his placement in Ad Seg on August 7, 2008, prevented him from timely filing his third level appeal, which he did not file until four and a half months later (138 days).  In his third level appeal, plaintiff stated, "the delay is because [he] was placed in ad seg on a separate issue and was recently issued [his] property."  (ECF No. 38 at 63.)  In his opposition, plaintiff argues that he "made several unsuccessful attempts to obtain his appeal from ASU ["Administrative Segregation Unit"] property officers, both through written and verbal requests communicating legal deadlines to no avail."  (ECF No. 44 at 16.)  Plaintiff states that immediately upon his release from Ad Seg and receipt of his property, he submitted his appeal to the third level with an explanation for his delay.  (ECF No. 44 at 16.)

In reply, defendants contend that plaintiff failed to submit evidence to support his claim concerning the delay, and argue that CDCR regulations require that Ad Seg conditions approximate those of the general population, including sending and receiving mail, and generally having access to institutional programs and services.  (ECF No. 45 at 6.)

However, on August 20, 2014, plaintiff filed a declaration[17] in which he states he was placed in Ad Seg on August 7, 2008, without benefit of personal property.  (ECF No. 38 at 5.)  Plaintiff declares under penalty of perjury that he "made several unsuccessful attempts to obtain his CDC 602 appeal as well as other pending active legal cases with deadlines from ASU property officers both through written and verbal requests communicating legal deadlines to no avail."  (ECF No. 38 at 5.)

Resolution of this claim is made difficult by plaintiff's failure to submit his declaration in support of his opposition to the motion along with his opposition, as the rules contemplate.  Such failure deprived defendants of an opportunity to address plaintiff's declaration.  Moreover,

---

[17] As set forth in footnote 12, infra, plaintiff's declaration was signed prior to the filing of the instant motion, and filed in support of his motion to modify the scheduling order.  Plaintiff's statement concerning his placement in Ad Seg on August 8, 2007, tracks his unverified statement contained in his opposition, but it appears that defendants did not consider plaintiff's declaration in their reply.

1  plaintiff submitted no other evidence to support his claim that he was unable to file his appeal for

2  such an extended period of time.  He provided no copies of written requests he allegedly

3  submitted to the property officers.  In addition, plaintiff's third level appeal did not claim that he

4  was unable to obtain his CDC 602 appeal from ASU property officers in his administrative

5  appeal.  Thus, we cannot know whether prison officials might have accepted plaintiff's untimely

6  third level appeal for review.  Plaintiff also fails to address how he was previously able to file a

7  lengthy initial appeal while confined in Ad Seg (ECF No. 38 at 3), 46 days after his placement,

8  but was completely unable to file his third level appeal for a four and a half month period.

9  On the other hand, despite the fact that plaintiff's statements in his opposition were not

10  verified, defendants did not specifically rebut plaintiff's allegations with evidence or legal

11  authority, other than to allege plaintiff failed to submit evidence and to cite general prison

12  regulations.  Defendants did not explain how plaintiff could file his appeal from Ad Seg without

13  benefit of his property, did not adduce evidence as to how plaintiff could obtain access to his

14  property while he was in Ad Seg, and did not provide any declarations from the ASU property

15  officer as to plaintiff's access or requests for such property during plaintiff's housing in Ad Seg.

16  That said, on this record, the undersigned finds that defendants failed to demonstrate that

17  plaintiff's third level review was available to him while he was housed in Ad Seg.  However,

18  because plaintiff failed to properly submit his declaration with his opposition to the motion, the

19  court recommends that the denial of defendants' motion be without prejudice to its renewal.

20  3. Overcrowding Claim

21  Plaintiff's administrative appeals raising his Eighth Amendment claims did not

22  specifically allege that overcrowding contributed to the violence that erupted on July 28, 2007.

23  Defendants contend that plaintiff failed to submit a 602 appeal concerning overcrowding or

24  alleging that defendant Cate was indifferent to plaintiff's safety.  (ECF No. 37-1 at 7.)  Plaintiff

25  argues that overcrowding was the proximate underlying cause.  (ECF No. 44 at 21.)

26  A prisoner must use the CDC Form 602 "to describe the problem and action requested."

27  Cal. Code Regs. tit. 15, § 3084.2(a).  The regulation provides no guidelines regarding the level of

28  specificity required when describing the problem.  The Ninth Circuit has addressed "the standard

of factual specificity required when a prison's grievance procedures do not specify the requisite level of detail." Griffin, 557 F.3d at 1120.  The court concluded that "[a] grievance also need not contain every fact necessary to prove each element of an eventual legal claim.  The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." Griffin, 557 F.3d at 1120.  See also Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002) (holding that "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.").  Moreover the U.S. Supreme Court has rejected a "name-all-defendants" rule, holding that "exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances."  Bock, 549 U.S. at 219 (citing Johnson v. Johnson, 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance process is not a summons and complaint that initiates adversarial litigation.")).  See also Gomez v. Winslow, 177 F.Supp.2d 977, 978-82 (N.D. Cal. 2001) (rejecting the argument that the plaintiff had failed to exhaust his three distinct claims of inadequate medical care and finding that all three claims were simply aspects of the inadequate medical treatment plaintiff had notified corrections officials about in his administrative appeals).

Liberally construing plaintiff's allegations, his claim against defendant Cate as to overcrowding condition is relevant to causation and the need for defendants in plaintiff's Eighth Amendment claims to protect plaintiff during the events of July 28, 2007.

However, even assuming plaintiff's appeals raising his Eighth Amendment claims properly included his overcrowding claim, his appeal was untimely, as set forth above, and prison officials properly screened out such untimely appeal.  Therefore, plaintiff's overcrowding claim must also be dismissed without prejudice based on plaintiff's failure to properly exhaust his administrative remedies.

III.  Recommendations

Accordingly, IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment (ECF No. 37) be granted in part and denied in part, as follows:

////

1        1. Plaintiff's Eighth Amendment claims against defendants Alexander, Anderson, Aston,

2   Fannon, Guzman, Ingwerson, Lewis, Lindsey, Look, McBride, Ramsey, Spangle, and Wheeler

3   are dismissed without prejudice based on his failure to properly exhaust administrative remedies;

4        2. Defendant Griffith's motion for summary judgment on plaintiff's due process claims

5   based on Appeal Log No. HDSP-D-08-0675 be denied;

6        3. Defendant Statti's motion for summary judgment on plaintiff's due process claims

7   based on Appeal Log No. 08-D-08-01669 be denied without prejudice to renewal within thirty

8   days of the adoption of these findings and recommendations;[18] and

9        4. Plaintiff's overcrowding claim against defendant Cate be dismissed without prejudice

10  based on plaintiff's failure to properly exhaust administrative remedies.

11        These findings and recommendations are submitted to the United States District Judge

12  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

13  after being served with these findings and recommendations, any party may file written

14  objections with the court and serve a copy on all parties.  Such a document should be captioned

15  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

16  objections shall be served and filed within fourteen days after service of the objections.  The

17  parties are advised that failure to file objections within the specified time may waive the right to

18  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

19  Dated:  December 3, 2014

20

21  /john2719.msj.fte
                                        KENDALL J. NEWMAN
22                                      UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

---

28  [18]  Defendant Statti is not required to file such a motion.

24